**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **FRED STRAUSS**, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          -against-<br><br>**LAKE CITY CREDIT and GARY S. WILLIKY**,<br><br>          Defendants. | Civil Case Number:<br><br><br>**<u>CIVIL ACTION</u>**<br><br>**CLASS ACTION COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff FRED STRAUSS (hereinafter, "Plaintiff"), a Florida resident, brings this class action complaint on behalf of himself and all others similarly situated, by and through the undersigned attorneys, against Defendants LAKE CITY CREDIT ("Lake City") and GARY S. WILLIKY (hereinafter "Williky" and collectively "Defendants"), based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

<u>**INTRODUCTION/PRELIMINARY STATEMENT**</u>

1. This is a claim brought under the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act for the Defendant's rampant disregard of both those statutes.

2. Defendant violated the Plaintiff's rights provided under the FDCPA in countless ways – (1) by failing to identify itself as a debt collector on the repeated phone calls it placed to the Plaintiff, (2) by deceptively making the Plaintiff settlement offers on a debt well past the statute of limitations, without advising the Plaintiff that the debt was no longer legally enforceable, as required by the Fifth Circuit, (3) by failing to provide the Plaintiff with

notice of his rights to dispute the alleged debt, (4) by misstating the balance of the Plaintiff's debt, (5) by responding to the Plaintiff's request for information about this ancient debt with a letter 'confirming' a settlement plan that was 'agreed to under prior correspondence', even though no such agreement or prior correspondence ever actually occurred, and (6) by falsely advising the Plaintiff that paying the debt would result in the account being deleted from the Plaintiff's credit report when, in fact, the account was not being reported on the Plaintiff's credit report and where the account was far too old to be legally reported on the Plaintiff's credit report.

3. Plaintiff brings these claims as a class action, because such illegal tactics are routinely engaged in by Defendant.  Indeed, despite the Defendant only having been in business for one year, since August of 2018, it has already been repeatedly sued for this sort of conduct.

4. For example, in April of 2019, Defendant was sued, in part, for (1) failing to provide a debtor with notice of her rights to dispute her debt, (2) mis-stating the amount of the debt owed by the debtor, (3) falsely stating that paying the debt would result in the account being deleted from the debtor's credit report, and for (4) attempting to collect a debt that was no longer legally enforceable.  *See, Kyle Koch v. Lake City Credit, LLC, and Gary S. Williky,* 6:19-cv-00667-CEM-GJK (FLMD April 9, 2019).

5. Similarly, in July of 2019, the Defendant was sued for sending a template letter to a debtor identical to the letter that the Plaintiff received in this action.  As in this action, the debtor in that action alleged that the Defendant violated the FDCPA by (1) failing to provide disclosures required under the FDCPA, (2) falsely stating that paying the debt would result in the account being deleted from the debtor's credit report, (3) attempting to 'settle' a debt that was no longer legally enforceable, and (4) for sending a 'confirmation of a settlement

plan' which was 'agreed to under prior correspondence' when, in fact, there was no such 'agreed settlement plan' or any 'prior correspondence'. *See, Louis A. Caponecchia v. Lake City Credit, LLC*, 4:19-cv-12057-MFL-SDD (MIED July 11, 2019).

6. Unsurprisingly, Defendant Lake City Credit, LLC has now repeated its past violations of the FDCPA, thereby necessitating the bringing of the instant action.

7. Defendant Gary S. Williky is the sole managing member of Lake City Credit and the person responsible for determining its collection policies.

8. Defendant Williky is no stranger to fraudulent conduct.

9. In 2015, the Securities and Exchange Commission ("**SEC**") filed a lawsuit against Williky, alleging that he engaged in various illegal financial acts, including insider trading, market manipulation, and email scalping.

10. The SEC alleged that Williky used multiple brokerage accounts, including three in his wife's name, to buy and sell a large number of shares of Imperial Petroleum, LLC, a small, publicly-traded company.

11. Using what are commonly known as "wash sales" and "match trades," where shares of a company are "sold" without actual change of beneficial ownership, Williky created an appearance of high liquidity of the shares of Imperial Petroleum, LLC.

12. Williky also fabricated and spread false information about Imperial Petroleum, LLC to raise its share price, including falsely claiming that Imperial Petroleum, LLC ***produced*** biodiesel fuel, when it was only a reseller.

13. On or around August 3, 2018, the SEC and Mr. Williky entered into a bifurcated settlement agreement whereby Mr. Williky was precluded from arguing that he did not violate the federal securities laws and the allegations in the SEC's complaint were to be deemed true.

*See, US Securities and Exchange Commission v. Gary S. Williky,* 1:15-cv-00357-WTL-MJD [Docket 62] (S.D. IN. August 3, 2018).[1]

14. Pursuant to the settlement agreement, the court was to determine the financial penalties.

15. On August 3, 2018, after a review of the relevant factual allegations, the court entered a judgment of **$2,784,245.10** against Mr. Williky, which amount included civil penalties for insider trading, scalping emails, and disgorgement of illegally-obtained profit. Williky was also permanently banned by the SEC from running any publicly traded company. *See id*

16. Less than a week later, on August 9, 2018, Williky registered Lake City Credit with the Florida Secretary of State as a new corporation and began collecting consumer debts.

17. Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

18. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). After determining that the existing consumer protection laws were inadequate, *id.* § 1692(b),

---

[1]    This    can    also    be    viewed    on    the    SEC's    website    at https://www.sec.gov/litigation/litreleases/2018/lr24244-opinion-granting-sec-remedies-motion.pdf, last visited on August 22, 2019.

Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

19. Plaintiff also seeks recovery for the calls he received on his cellular phone from the Defendants in violation of the Telephone Consumer Protection Act ("TCPA").

## JURISDICTION AND VENUE

20. The Court has jurisdiction over this class action under 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201.  If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

21. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

22. Plaintiff is a natural person and a resident of Orlando, Florida, and is a "Consumer" as defined by 15 U.S.C. §1692(a)(3).

23. Defendant Lake City Credit, LLC is a Delaware limited liability company with a primary business address of 2000 South Stemmons Freeway, Suite 102, Lake Dallas, TX 75065.

24. Lake City Credit is registered to conduct business in the state of Florida, where its registered agent is Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

25. The principal business of Defendant Lake City Credit, LLC is the collection of defaulted debts originally incurred to a third party.  Indeed, the Defendant's website advertises that "Lake City Credit is a debt collection service company founded by managers with decades of collections experience" which focuses on collections in the area of "credit cards, consumer loans, medical, judgments, services".

26. Defendant Lake City Credit regularly attempts to collect alleged debts originally due to another.

27. Defendant Lake City Credit is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

28. Defendant Williky regularly attempts to collect alleged debts originally due to another.

29. Defendant Williky is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

## ALLEGATIONS OF FACT

30. Some time prior to May 29, 2019, the Defendant began communicating with the Plaintiff in an attempt to collect a debt the Plaintiff allegedly incurred to HSBC-Orchard Bank.

31. These communications were all by phone.

32. Plaintiff answered these calls and spoke with the Defendant.

33. At that time, the Defendant advised the Plaintiff that they were seeking to collect on this credit card obligation purportedly incurred to HSBC-Orchard Bank.

34. Plaintiff repeatedly the Defendant that he did not believe he owed this old debt, which would have been incurred and delinquent no more recently than 2008.

35. Plaintiff repeatedly asked the Defendant to mail him something in writing, reflecting that he owed this debt.

36. Finally, on May 29, 2019, the Defendant mailed the Plaintiff a collection letter, a copy of which is attached as Exhibit A.

37. That Letter stated:

> Dear Fred L. Strauss,
>
> As agreed to under prior correspondence, this letter is to confirm the following settlement plan for account number 1277346-1:
>
> Our office will accept settlement in the amount of $899.08 to be paid in a single installment of $899.08 no later than 06/20/2019. If payment is not

received in our office by 06/20/2019, our office reserves the right to revoke this settlement and reinstate the full balance of the account.

Once cleared funds are received in the account our office will report this account to all three credit bureaus for deletion.  This settlement also provides that there will not be a tax filing involving the reduced amount.

*See,* Exhibit A.

38. Other than this May 29, 2018 Collection Letter, Defendant has not sent the Plaintiff any correspondence at all.

39. Defendant has certainly never sent the Plaintiff any 'prior correspondence'.

40. Plaintiff has never 'agreed' to any 'settlement plan' with the Defendant, and never discussed any such 'settlement plan' with the Defendant.

41. Defendant never reported the Plaintiff's debt to any of the credit reporting agencies.

42. Upon information and belief, this HSBC-Orchard Bank debt is well past the statutory time frame for reporting debts on a consumer's credit report, and Defendant could therefore not have legally reported this account to the consumer reporting agencies even if it wanted to.

43. Instead, the Defendant simply made up nonsensical threats of deleting non-existent information from the Plaintiff's credit reports, in an attempt to coerce Plaintiff into paying on the alleged obligation, much as the Defendant has done time and time again to numerous consumers as evinced by the lawsuits listed above.

44. The HSBC-Orchard Bank obligation arose from a credit card which was solely opened for personal, and not business, purposes.

45. The HSBC-Orchard Bank credit card was solely used for personal, and not business, purposes.

46. The alleged HSBC-Orchard Bank obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

47. Upon information and belief, Defendant's pattern and practice is to solely call debtors, and then, when those debtors ask for some documentation regarding their debts, to simply issue a letter which falsely claims to 'confirm' a 'settlement plan' that was 'agreed to under prior correspondence'.

48. The May 29th Collection Letter states that the 'Account Balance' is $899.08.

49. Upon information and belief, this is false, and the 'Account Balance' is not $899.08. Instead, this 'Account Balance' is only the amount that the Defendant claims the Plaintiff 'agreed' to pay via their 'prior correspondence'.

50. Defendant never provided any 30-day Validation Notice to the Plaintiff, as required by 15 USC 1692g.

51. The May 29th boilerplate letter similarly fails to include any 30-day Validation Notice.

52. The May 29th boilerplate letter also fails to include any disclosure that the communication is from a debt collector.

53. After the Plaintiff's receipt of this May 29th boilerplate letter, the Defendant continued to call the Plaintiff in an attempt to collect this debt.

54. On none of these calls did the Defendant ever disclose that it was a debt collector or that the communication was from a debt collector, as required by 15 USC 1692e(11).

55. Furthermore, Defendant never had Plaintiff's consent to call the Plaintiff's cellular phone number of 831-585-9145.

56. Nonetheless, Defendant placed countless calls to the Plaintiff's cellular phone of 831-585-9145 within the one year period preceding the filing of this Complaint.

57. On May 17, 2019, the Plaintiff asked the Defendant to stop calling him.

58. Despite Plaintiff's request for the calls to stop, Defendant continued to call Plaintiff's cellular telephone of 831-585-9145 with an automated telephone dialing system. Some of those calls took place on May 28, 2019, June 7, 2019, July 15, 2019 and August 2, 2019.

59. Defendant's use of an automated telephone dialing system was clearly indicated by the fact that no customer service representative was on the line immediately when the Plaintiff would answer the Defendant's calls. Instead, the customer service representative would only come on the line *after* the call was placed, *after* the Plaintiff answered the phone, and *after* the Plaintiff would repeatedly state 'Hello'.

60. This is indicative of the automated voice recognition aspect of automated telephone dialing systems, which automatically place thousands of calls, and then route the answered calls to a (hopefully) available customer service representative.

61. Defendant's use of an automated telephone dialing system was further indicated by the statements of the Defendant's representative. When the Plaintiff asked why the Defendant was calling him so many times, the Defendant admitted 'because they're automated calls'.

62. Defendant's violations of the TCPA harmed the Plaintiff by invading on the Plaintiff's right to privacy – the very harm the TCPA was enacted to prevent.

63. Defendant's repeated violations of the FDCPA caused the Plaintiff a real risk of harm. Plaintiff, as would the least sophisticated consumer, would believe that he should settle the debt, to avoid a negative impact to his credit report. Plaintiff also would believe that he should accept this 'settlement' offer, otherwise the Defendant could attempt to legally enforce this debt, including through a lawsuit.

64. Defendant further subjected the Plaintiff to abusive debt collection practices that the

Plaintiff had a substantive right to be free from.

65. Moreover, in the Defendant's calls, the Defendant never once stated that it was a debt collector, that the communication was an attempt to collect a debt, or that any information obtained would be used for that purpose.

66. Nor did the Defendant disclose to the Plaintiff in its May 29, 2019 Collection Letter that it was a debt collector.

67. The Defendant has thus harmed the Plaintiff, by depriving the Plaintiff of information to which he was statutorily entitled to receive, and by obtaining information from the Plaintiff without disclosing the reasons that this information was being sought for.

68. Defendants could have taken the steps necessary to bring its actions within compliance with the FDCPA, but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

## **CLASS ALLEGATIONS**

69. Plaintiff brings claims, pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP") Rule 23, individually and on behalf of the following consumer classes:

**Class A:**    a) All consumers nationwide, b) to whom the Defendant mailed a Collection Letter using the same template as the attached Exhibit A, during the one-year period immediately preceding the filing of this action, c) in an attempt to collect a debt which was not being reported by the consumer reporting agencies due to the age of the debt, d)  which Letter stated that "Once cleared funds are received in the account our office will report this account to all three credit bureaus for deletion."

**Class B:**      a) All consumers nationwide, b) to whom the Defendant mailed a Collection Letter using the same template as the attached Exhibit A, during the one-year period immediately preceding the filing of this action, c) without including a disclosure that the communication was from a debt collector.

**Class C:**      a) All consumers in the State of Florida, b) to whom the Defendant mailed a Collection Letter using the same template as the attached Exhibit A, during the one-year period immediately preceding the filing of this action, c) in an attempt to collect a credit card debt which has been delinquent and unpaid for more than four years, d)  and which offered a 'settlement plan' to 'settle' the debt, without disclosing that the debt was not legally enforceable.

**Class D:**      a) All consumers nationwide, b) to whom the Defendant mailed a Collection Letter using the same template as the attached Exhibit A, during the one-year period immediately preceding the filing of this action, c) which Letter stated "As agreed to under prior correspondence, this letter is to confirm the following settlement plan", d)   where there was no such 'prior correspondence' or any agreement to a 'settlement plan'.

**Class E:**      a) All consumers nationwide, b) to whom Defendant placed a call without disclosing that the communication was from a debt collector, c) during the one-year period immediately preceding the filing of this action.

70. The identities of all class members are readily ascertainable from the records of Defendant and those companies and entities on whose behalf they attempt to collect and/or have purchased debts.

71. Excluded from the Plaintiff Classes are the Defendant and all officers, members, partners, managers, directors, and employees of the Defendant and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

72. There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members. The principal issues is whether the Defendant's policies – (1) failing to identify itself as a debt collector on the phone calls and letters it places to debtors, (2) deceptively making settlement offers on zombie debts well past the statute of limitations, without disclosing that the debt was no longer legally enforceable, (3) failing to provide debtors with a 30-day Validation Notice, informing them of their rights to dispute the alleged debt, (4) issuing letters to debtors 'confirming' a settlement plan that was 'agreed to under prior correspondence', even though no such agreement or prior correspondence ever actually occurred, and (5) falsely advising debtors that paying their debt would result in the account being deleted from their credit report when, in fact, these obsolete accounts were not being reported on the debtor's credit reports - violate 15 U.S.C. § 1692.

73. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

74. The Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor Plaintiff's attorneys have any interests, which might cause them not to vigorously pursue this action.

75. This action has been brought, and may properly be maintained, as a class action pursuant

to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Classes defined above is so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members. The principal issues is whether the Defendant's policies – (1) failing to identify itself as a debt collector on the phone calls and letters it places to debtors, (2) deceptively making settlement offers on zombie debts well past the statute of limitations, without disclosing that the debt was no longer legally enforceable, (3) failing to provide debtors with a 30-day Validation Notice, informing them of their rights to dispute the alleged debt, (4) issuing letters to debtors 'confirming' a settlement plan that was 'agreed to under prior correspondence', even though no such agreement or prior correspondence ever actually occurred, and (5) falsely advising debtors that paying their debt would result in the account being deleted from their credit report when, in fact, these obsolete accounts were not being reported on the debtor's credit reports - violate 15 U.S.C. § 1692.

(c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members. The Plaintiff and all members of the Plaintiff Classes have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(d)    **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class

members insofar as Plaintiff has no interests that are averse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor their counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e)  **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

76. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

77. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15  U.S.C. §1692e *et seq.***
**(individually and on behalf of the class)**

78. Defendant's debt collection efforts attempted and/or directed towards the Plaintiff and the class members violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

79. Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, misleading and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

80. The Defendants violated said section by:

   a.  failing to identify itself as a debt collector on the letters and phone calls it places to debtors, in violation of 15 USC §1692e(11);

   b.  deceptively making settlement offers on zombie debts well past the statute of limitations, without disclosing that the debt was no longer legally enforceable, in violation of 15 USC §1692e, §1692e(2), §1692e(5) and §1692e(10).

   c.  issuing letters to debtors, deceptively 'confirming' a settlement plan that was 'agreed to under prior correspondence', even though no such agreement or prior correspondence ever actually occurred, in violation of 15 USC §1692e, 15 USC §1692e(2) and 15 USC §1692e(10); and

   d.  falsely advising debtors that paying their debt would result in the account being deleted from their credit report when, in fact, these obsolete accounts were not being reported on the debtor's credit reports, in violation of 15 USC §1692e, §1692e(2), §1692e(5) and §1692e(10).

81. By reason thereof, Defendants are liable to Plaintiff for judgment that Defendants' conduct violated Section 1692e *et seq.* of the FDCPA, statutory damages, costs and attorneys' fees.

## COUNT II

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 16  U.S.C. §1692e *et seq.*
### (individually)

82. Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

83. Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, misleading and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

84. The Defendants violated said section by mis-stating the amount of its 'settlement amount' as the 'amount of the debt'.

85. By reason thereof, Defendants are liable to Plaintiff for judgment that Defendants' conduct violated Section 1692e *et seq.* of the FDCPA, statutory damages, costs and attorneys' fees.

## COUNT III

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §1692g *et seq.*
### (individually and on behalf of the class)

86. Defendant's debt collection efforts attempted and/or directed towards the Plaintiff

violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692g.

87. Pursuant to 15 U.S.C. § 1692g(a)(1), a collection agency shall state, within its initial written communication, the amount of the debtor's debt.

88. Furthermore, pursuant to 15 U.S.C. § 1692g(a)(3)-(5), the collection agency is required to provide "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector", "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against theconsumer and a copy of such verification or judgment will be mailed to theconsumer by the debt collector" and "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

89. Defendants violated these provisions by failing to accurately and clearly state the amount of the debt in its collection letters sent to Plaintiff and the class members who all received this same template collection letter.

90. Instead, the Defendants simply listed the reduced 'agreed to settlement amount' of $899.08 as the 'Account Balance'.

91. This was thrown further into doubt, when the Defendants elsewhere set forth '$0.00' on the Collection Letter as the 'Amount Due'.

92. Furthermore, the Defendants failed to include any of the disclosures required by 15 U.S.C. § 1692g(a)(3)-(5) on the initial collection letters mailed to plaintiff and the

similarly situated class members.

93. By reason thereof, Defendant is liable to Plaintiff for judgment that Defendant's conduct violated Section 1692e *et seq.* of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

## <u>COUNT IV</u>
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §227 *et seq.*

94. As alleged above, Defendant placed numerous calls to the Plaintiff's cellular phone number throughout the past year.

95. Plaintiff never provided Defendant with his consent to be called on his cellular phone.

96. Even if the Plaintiff had ever provided Defendant with his consent to be called, Plaintiff subsequently and repeatedly revoked his consent to be called.

97. Despite Plaintiff's requests for the calls to stop, Defendant continued to call Plaintiff's cellular telephone with an automated telephone dialing system.

98. Defendant's use of an automated telephone dialing system was clearly indicated by the fact that no customer service representative was on the line immediately when the Plaintiff would answer the Defendant's calls. Instead, the customer service representative would only come on the line *after* the call was placed, *after* the Plaintiff answered the phone, and *after* the Plaintiff would repeatedly state 'Hello'.

99. This is indicative of the automated voice recognition aspect of automated telephone dialing systems, which automatically place thousands of calls, and then route the answered calls to a (hopefully) available customer service representative.

100.     Defendant's use of an automated telephone dialing system was further indicated by the statements of the Defendant's representative.  When the Plaintiff asked why the Defendant was calling him so many times, the Defendant admitted 'because they're automated calls'.

101.     Defendant's violations of the TCPA harmed the Plaintiff by invading on the Plaintiff's right to privacy – the very harm the TCPA was enacted to prevent.

102.     Defendant's calls directed towards the Plaintiff violated various provisions of the TCPA, including but not limited to 47 USC §227(b)(A)(iii), as the Defendant lacked any prior express consent of the Plaintiff to place such automated calls to his cellular phone.

103.     As a result of Defendant's violations of the TCPA, Plaintiff has been damaged and is entitled to damages in accordance with the TCPA.

104.     As a result of Defendant's violations of 47 U.S.C. § 227(b) *et seq.* Plaintiff is entitled to an award of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. § 227(b)3.

105.     Defendant's calls and prerecorded messages called and/or directed towards the Plaintiff were further in willful violation of the TCPA, because the Defendant knew that it did not have the Plaintiff's consent to call the Plaintiff's cellular phone, but it continued to do so nonetheless.

106.     As a result of Defendant's willful violations of 47 U.S.C. § 227(b) *et seq.* Plaintiff is also entitled to an award of treble damages $1,500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)3.

## DEMAND FOR TRIAL BY JURY

107.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and Plaintiff's Counsel, as Class Counsel;

(b)    Awarding Plaintiff and the Class statutory damages;

(c)    Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(d)    Awarding pre-judgment interest and post-judgment interest; and

(e)    Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.


Dated:  August 23, 2019

By:    /s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
MARCUS ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282
Facsimile: (732) 298-6256
Email: yzelman@marcuszelman.com
*Attorneys for Plaintiff*